Andrew M. Calamari
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0080 (Brody)


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------:
SECURITIES AND EXCHANGE COMMISSION,              :
                                                 :
                        Plaintiff,               :
                                                 :
             v.                                  :          14 Civ. _____
                                                 :
DOUGLAS FURTH                                    :          **COMPLAINT**
                                                 :
                        Defendant.               :
-----------------------------------------------------------------:

## PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendant Douglas Furth ("Furth" or the "Defendant"), alleges as follows:

1.      From at least September to December 2010, Furth, a stock promoter, engaged in a fraudulent scheme to manipulate the market for the common stock of SearchPath HCS, Inc. ("SearchPath).

2.      More specifically, in September 2010, Furth entered into an illicit agreement with an Individual ("Individual A"), whom Furth believed represented a group of stock brokers with trading discretion over the accounts of wealthy customers.  Furth promised to pay a 30% kickback to Individual A and the brokers he represented in exchange for buying $10-30 million of SearchPath stock through their customers' accounts.

1

3.   On October 13-15 and December 6-10, 2010, in accordance with the illicit arrangement, Furth instructed Individual A to submit orders to buy a total of approximately 52 million shares of SearchPath stock for a total of approximately $80,000.

4.   Furth gave Individual A detailed instructions concerning the size, price and timing of those orders. In this way, Furth intended to ensure that all of Individual A's purchase orders were matched with Furth's sell orders at prices Furth predetermined.

5.   On October 22, 2010 and December 21, 2010, Furth paid Individual A approximately $24,000 in kickbacks for those purchases.

## VIOLATIONS

6.   By virtue of his conduct, the Defendant violated Section 17(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(1), Section 9(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78i(a)(1), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a) and (c).

## JURISDICTION AND VENUE

7.   The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), seeking to permanently restrain and enjoin the Defendant from engaging in the transactions, acts, practices and courses of business alleged in this Complaint. The Commission also seeks a final judgment: (i) ordering the Defendant to disgorge his ill-gotten gains, if any, with prejudgment interest thereon; (ii) ordering the Defendant to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3); and (iii) prohibiting the Defendant from participating in an offering of penny stock pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. §

78u(d)(6).

8. This Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(d) and 77v(a), and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

9. Venue in this District is proper pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within this District. For example, the Defendant wired the kickback payments to a bank located in the Eastern District of New York.

10. The Defendant, directly or indirectly, has made use of the means or instruments of transportation or communication in interstate commerce, or of a means or instrumentality of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

## DEFENDANT

11. **Furth**, age 59, is a stock promoter and a resident of Solon, Ohio.

## RELEVANT ENTITY

12. **SearchPath HCS, Inc.** is a Nevada corporation with its principal offices in Cleveland, Ohio, that purports to conduct operations through its wholly owned subsidiary, SearchPath International Inc., a franchisor of talent acquisition services. At all relevant times, SearchPath's common stock has been quoted on the OTC Bulletin Board.

## FACTS

13. SearchPath was incorporated on February 1, 2000.

14. In 2010, SearchPath purported to conduct operations through its wholly owned

subsidiary, SearchPath International Inc.

15. According to a Quarterly Report for the quarterly period ended December 31, 2010 that SearchPath posted on the OTC Markets website on February 15, 2011, SearchPath had $93,292 in cash and a working capital deficit of $818,226 as of December 31, 2010.

16. Currently and at all relevant times, SearchPath common stock qualified as a penny stock as it did not meet any of the exceptions from the definition of penny stock contained in Rule 3a51-1 of the Exchange Act.

17. On September 16, 2010, during a telephone conversation, Furth began discussions with Individual A concerning a scheme to manipulate SearchPath stock. Individual A represented himself as a person who could arrange stock purchases by a group of brokers with discretion over the accounts of wealthy customers.

18. During the September 16th conversation, Furth told Individual A that Furth owned a billion shares of SearchPath stock and wanted to liquidate his entire position over a 6 month period for at least one cent per share, for a total of $10-30 million.

19. During the September 16th conversation, Furth agreed to pay Individual A a 30% kickback in exchange for the purchase of SearchPath stock by Individual A's brokers. Individual A told Furth that Individual A would keep a 7% kickback and give the remaining 23% kickback to the brokers.

20. Also during the September 16th conversation, Furth agreed not to disclose the kickback to SearchPath investors.

21. On October 7, 2010, during a telephone conversation, Furth and Individual A discussed a test transaction to ensure that the matched trades would be executed smoothly. Furth and Individual A agreed that Furth would "be low offer" and tell individual A when to place his purchase order, how many shares to purchase, and at what price.

22. Also during the October 7th conversation, Furth and Individual A agreed that Individual A would purchase approximately $30,000 of SearchPath stock over the following week in preparation for ultimately purchasing $30 million of SearchPath stock.

23. On October 13, 2010, in accordance with the agreement to purchase SearchPath stock, Individual A called Furth to arrange the stock purchase. Furth and Individual A agreed on the amount and price of the shares that Furth would offer and Individual A would purchase.

24. On October 13, 2010, Furth placed an order to sell 4.15 million shares of SearchPath at $.0024 per share, and following Furth's instructions, Individual A purchased 4.15 million shares of SearchPath at $.0024 per share.

25. The next day, on October 14, 2010, during a telephone conversation, Furth and Individual A agreed to "do the same thing."

26. Approximately one hour later on October 14, 2010, during a telephone conversation, Furth and Individual A agreed on the amount and price of the shares that Furth would offer and Individual A would purchase.

27. On October 14, 2010, Furth placed an order to sell 5.5 million shares of SearchPath at $.0018 per share, and following Furth's instructions, Individual A purchased 5.5 million shares of SearchPath at $.0018 per share.

28. The next day, on October 15, 2010, during a telephone conversation, Furth and Individual A again agreed on the amount and price of the shares that Furth would offer and Individual A would purchase.

29. On October 15, 2010, Furth placed an order to sell 4.8 million shares of SearchPath at $.0021 per share, and following Furth's instructions, Individual A purchased 4.8 million shares of SearchPath at $.0021 per share.

30. In total, between October 13 and 15, 2010, Individual A purchased approximately $30,000 of SearchPath stock.

31. Furth and Individual A coordinated their trading on each day to attempt to match Individual A's buy orders to Furth's sell orders.

32. Days later, Furth made a kickback payment to Individual A. On October 22, 2010, Furth wired $9,000 to a bank account designated by Individual A, which was approximately 30% of the approximately $30,000 of SearchPath stock purchased by Individual A.

33. On October 26, 2010, during a telephone conversation, Furth told Individual A that Furth was buying SearchPath shares "so that we can get this up to where we can both make some more money on it." Furth told Individual A that he was buying the shares at "very advantageous prices" but that he was "anxious to get it up a lot higher."

34. Over the next few weeks, SearchPath's stock price decreased.

35. On October 29, 2010, during a telephone conversation, Furth told Individual A that Furth wanted to "do a few more transactions" with Individual A so that Furth can "get the stock up higher to where we want to be." Furth told Individual A that "with a hundred grand, I can get it probably pretty close to half a penny."

36. On November 8, 2010, during a telephone conversation, Furth told Individual A that Furth was "ready to go." Furth told Individual A: "You would take the shares from me, and I would use the cash that you give me to go buy back more shares, and that activity would push the stock price a lot higher and keep it under our control." Individual A agreed to have his brokers purchase $50,000 of SearchPath stock from Furth in December.

37. On December 6, 2010, in accordance with the agreement to purchase SearchPath stock, Individual A called Furth to arrange the stock purchases.

6

38. On December 6, 2010, Furth placed an order to sell 8.3 million shares of SearchPath stock at $.0012 per share, and following Furth's instructions, Individual A purchased 8.3 million shares of SearchPath at $.0012 per share.

39. The next day, on December 7, 2010, Furth offered to sell, and following Furth's instructions, Individual A bought 7.7 million shares of SearchPath stock at $.0013 per share.

40. The next day, on December 8, 2010, Furth offered to sell, and following Furth's instructions, Individual A bought 7.2 million shares of SearchPath stock at $.0014 per share.

41. The next day, on December 9, 2010, Furth offered to sell, and following Furth's instructions, Individual A bought 7.2 million shares of SearchPath stock at $.0014 per share.

42. The next day, on December 10, 2010, Furth offered to sell, and following Furth's instructions, Individual A bought 7.2 million shares of SearchPath stock at $.0014 per share.

43. In total, between December 6 and 10, 2010, Individual A purchased approximately $50,000 of SearchPath stock.

44. Furth and Individual A coordinated their trading on each day to attempt to match Individual A's buy orders to Furth's sell orders.

45. Shortly thereafter, Furth made a kickback payment to Individual A. On December 21, 2010, Furth wired $15,000 to a bank account designated by Individual A, which was approximately 30% of the $50,000 of SearchPath stock purchased by Individual A.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a)(1) of the Securities Act

46. The Commission realleges and incorporates paragraphs 1 through 45 by reference as if fully set forth herein.

47. Defendant, directly or indirectly, singly or in concert, in the offer or sale of securities, by

the use of any means or instruments of transportation or communication in interstate commerce, or by the use of the mails, has employed, is employing, or is about to employ, devices, schemes, or artifices to defraud.

48. By reason of the foregoing, the Defendant, singly or in concert, directly or indirectly, has violated, is violating, and unless enjoined will again violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## SECOND CLAIM FOR RELIEF

### Violations of Section 9(a)(1) of the Exchange Act

49. Paragraphs 1 through 45 are hereby realleged and incorporated by reference.

50. Defendant, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange, for the purpose of creating a false or misleading appearance of active trading in any security other than a government security, or a false or misleading appearance with respect to the market for any such security, has entered, or is entering, or is about to enter an order or orders for the purchase or sale of a security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale or purchase of any such security, has been or will be entered by or for the same or different parties.

51. By reason of the foregoing, the Defendant, singly or in concert, directly or indirectly, has violated, are violating, and unless enjoined will again violate, Section 9(a)(1) of the Exchange Act, 15 U.S.C. § 78i(a)(1).

## THIRD CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c)

52. Paragraphs 1 through 45 are hereby realleged and incorporated by reference.

53. Defendant, directly and indirectly, singly or in concert, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange: (i) has employed, is employing, or is about to employ, devices, schemes, or artifices to defraud; and/or (ii) has engaged, is engaging, or is about to engage in acts, practices, or courses of business which operate, operated, or would operate as a fraud or deceit upon other persons.

54. By reason of the foregoing, the Defendant, singly or in concert, directly or indirectly, has violated, is violating, and unless enjoined will again violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. §240.10b-5(a) and (c).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently enjoining the Defendant from violating Section 17(a)(1) of the Securities Act, 15 U.S.C. §77q(a)(1), Section 9(a)(1) of the Exchange Act, 15 U.S.C. § 78i(a)(1), Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. §§ 240.10b-5(a) and (c).

### II.

Ordering the Defendant to disgorge his ill-gotten gains, if any, plus prejudgment interest.

### III.

Imposing civil monetary penalties upon the Defendant pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

### IV.

Prohibiting the Defendant from participating in any offering of penny stock pursuant to Section

20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6).

## V.

Granting such other and further relief as the Court may deem just and proper.

Dated:  December 12, 2014
        New York, New York

_____
Andrew M. Calamari
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place, 200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0080 (Brody)
brodyt@sec.gov

Of Counsel:

    Amelia A. Cottrell
    Todd D. Brody
    Gerald A. Gross
    Liora Sukhatme